UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
------------------------------------------------------------------x

SPY PHONE LABS LLC,

                      Plaintiff,

        -v-

GOOGLE, INC.,

                      Defendant.
------------------------------------------------------------------x

No. _____

ECF Case

**COMPLAINT**

Plaintiff Spy Phone Labs LLC ("Plaintiff"), by their undersigned attorneys, for their complaint against defendant Google, Inc. ("Defendant"), alleges as follows:

INTRODUCTION

1. Defendant operates an online marketplace known as "Google Play" through which members of the general public can download application software, commonly referred to as an "app," that performs specific computer functions on mobile phones and other electronic devices.

2. Plaintiff is the owner and developer of an app known as "Spy Phone," which enables a person to track the location and certain usage information for a mobile phone onto which the app is downloaded. Almost 1,000,000 downloads of Plaintiff's app were distributed through Google Play from August 2012 to June 2013

3. Plaintiff is also the assignee of the United States Trademark "Spy Phone," which was issued by the United States Patent and Trademark Office in 2011.

4. In or about August 2012, after agreeing to Defendant's mandated terms of service and establishing a developer's account with Defendant, Plaintiff began offering the Spy Phone app for download on Google Play.

5. On at least nine occasions between August 2012 and June 2013, Plaintiff submitted complaints to Defendant, using Defendant's online form, that other app developers were infringing on Plaintiff's Spy Phone trademark by offering apps for download that performed similar functions to Plaintiff's app under the name Spy Phone.

6. On all occasions prior to June 25, 2013, Defendant promptly removed all infringing apps found on Google Play.

7. On June 28, 2013, Plaintiff received an electronic notification that its developer account had been terminated based on false statements that Plaintiff's app violated Google Play's terms of use.

8. On July 16, 2013, in response to Plaintiff having filed a trademark complaint on June 25, 2013 about another developer offering an app under the name Spy Phone, Defendant advised Plaintiff that it would take no further action against third parties that infringed on Plaintiff's trademark rights, and Defendant has continued to allow apps offered under names that infringe on Plaintiff's trademark to appear on Google Play.

9. Plaintiff now brings this action against Defendant for violations of the Lanham Act and for breach of contract to recover damages and obtain injunctive relief.

## PARTIES

10. Plaintiff Spy Phone Labs LLC is a New Jersey limited liability company with it principal place of business in Wayne, NJ.

11. Upon information and belief, Defendant Google, Inc is a Delaware corporation with its principal place of business located in Mountain View, California.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 insofar as this action asserts claims arising under federal law, namely the Lanham Act.

13. Alternatively, this Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) insofar as Plaintiff and Defendant are citizens of different States, and the amount in controversy in this action exceeds $75,000, exclusive of interest and costs.

14. This Court has personal jurisdiction over Defendant in this action because Defendant has sufficient minimum contacts with New Jersey, and maintaining this action in this Court will not offend traditional notions of fair play and substantial justice.

15. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## FACTS ALLEGED

### Defendant and Google Play

16. Rather than simply provide telephone service, today's mobile "smart" phones offer many features and can perform numerous functions. Some of these

functions and features are installed on the phone by the manufacturer, but many more can be added by the consumer based on his or her needs and interests.

17. Functions and features are added to a mobile phone by installing or downloading a software application, or "app."

18. Google Play, is an app distribution platform for mobile phones and other electronic devices that operate on the Android operating system, the operating system installed on close to 50% of all mobile phones in use today.

19. Google Play enables owners and users of smart phones to download apps as well as well as other electronic media published through Google.

20. Google Play was developed and is now maintained by Defendant.

21. Defendant and its agents have total and complete discretion in establishing and enforcing the rules, policies and procedures that govern the activities of developers and consumers who use Google Play to offer or obtain apps.

22. There are three methods by which Defendant and app developers generate revenue from apps offered through Google Play.  First, the consumer is charged a fee through Google Play to download the app, which is then shared between Defendant and the Developer.  Second, the developer can sell additional products or services to the consumer after the initial download, and the parties share that revenue.  The third and most popular method is for the developer to place advertisements generated by Defendant on the app or on a website where users of the app would go to view information about the app, with a larger share of revenue being paid to developers with the most popular apps, since those advertisements are presumably being viewed by more consumers.

23. Upon information and belief, 90% of all Android apps that are downloaded by consumers are acquired through Google Play.

24. As a result of Google Play's dominance in the app market, an app developer are heavily reliant on Defendant for their business and cannot effectively operate in the marketplace unless its apps are available on Google Play.

### The Spy Phone App

25. Plaintiff is the developer and owner of all the rights in an app distributed under the name Spy Phone.

26. When downloaded on a mobile phone, the Spy Phone app allows the user or a third party, such as a parent or guardian of a teenager, to determine the location of the phone and provides information about how the user is using the phone. Information about the phone is obtained through Plaintiff's website, <spyphone.com>.

27. Plaintiff displayed advertisements placed by Defendant on its website, which is how Plaintiff generated revenue through its app.

28. Unlike some apps available on Google Play that had features designed to conceal the fact that an app collecting phone data had been downloaded on the phone, Plaintiff's Spy Phone app has always included a feature that generates an icon on the phone, which informs the user that the Spy Phone app has been downloaded on the phone.

### The Parties' Agreement

29. In or around July 2012, Plaintiff applied to open a developer account on Google Play for the purpose of offering its Spy Phone for app distribution.

30. Plaintiff applied for its Google Play developer account by filling out the information require on Defendant's online form and agreeing to the terms of use mandated by Defendant.

31. After submitting the requested information and agreeing to Defendant's terms of use, Plaintiff was informed by electronic message that its Google Play developer account had been activated.

32. The parties' agreement includes or incorporates rules, policies and procedures created by Defendant that must be followed by developers offering apps for download.

33. One such rule prohibits a developer from offering an app on Google Play that collects information from a phone without the user's knowledge (the "Spyware Prohibition"):

> Apps that collect information (such as the user's location or behavior) without the user's knowledge… are prohibited on Google Play. . . .
>
> Apps that collect information (such as the user's location or behavior) without the user's knowledge (spyware), malicious scripts and password phishing scams are also prohibited on Google Play, as are applications that cause users to unknowingly download or install applications from sources outside of Google Play.

34. Obviously, the Spyware Prohibition would not apply if the app is downloaded on the user's own phone or if a parent downloaded the app on his or her child's phone, because in those instances the information would be collected only with the user's knowledge.

35. Another rule incorporated into the developer agreement provides Defendant with the right to suspend any app that infringes on the intellectual property rights of others and terminate the infringing developer's accounts:

> Trademark infringement is improper or unauthorized use of a trademark. Google Play policies prohibit apps that infringe trademarks. If you publish apps in Google Play that use another party's trademarks, your apps can be suspended and your developer account terminated

36. Defendant also provides anyone who believes that its intellectual property rights are being infringed on Google Play with access to an online form to notify Defendant about any such infringement.

<u>Defendant Repeatedly Removes the Spy Phone App From Google Play Without Basis</u>

37. In or around August 2012, Plaintiff began offering its Spy Phone app for download on Google Play.

38. During the first two months that the Spy Phone app was available on Google Play it was downloaded approximately 65,000 times.

39. On or about October 12, 2012 Plaintiff received a suspension notice from Defendant stating that its app had been removed from Google Play for violating Defendant's Spyware Prohibition.

40. Defendant appealed on the grounds that anyone who downloaded the Spy Phone app on a phone knew what its function was and therefore, the Spyware Prohibition was not being violated because no information was being collected without the user's knowledge and, further, since a visible icon notified the user that Spy Phone had been downloaded on the phone, a person would have knowledge of the app even if he or she was not the person who downloaded it.

41. Defendant never responded to Plaintiff's appeal despite having included the following language in an auto-response generated following Plaintiff's online appeal:

. . . Valid appeal submissions will receive an email response indicating whether the appeal was accepted, rejected, or under further review.

42. Despite a lack of guidance from Defendant on how its app violated the Spyware Prohibition, Plaintiff modified its app to reduce the amount of information collected.

43. Once modified, Plaintiff again began offering the Spy Phone app for download on Google Play.

44. On or around January 6, 2013 after and additional 130,000 downloads, Plaintiff received another suspension notice from Google Play, again asserting that the Spy Phone app had violated the Spyware Prohibition.

45. Again, Plaintiff appealed through Defendant's online appeals process and received no response.

46. After receiving the second suspension notice, Plaintiff modified its app further to add a notification bar, which had been developed by Defendant, that sends out an alert every five hours to notify the user that the Spy Phone app had been downloaded on the phone. This was in addition to the visible icon feature already included as part of the Spy Phone app.

47. On or around February 12, 2013, after another 230,000 downloads, Plaintiff received another suspension notice from Defendant informing Plaintiff that it had been suspended for violating the fee sharing provision of the parties' agreement.

48. Plaintiff appealed again through Defendant's online appeals process.

49. This time, Defendant responded to the appeal, and found that its suspension of Plaintiff was unwarranted and, on or about March 14, 2014, lifted the suspension.

50. At the time Defendant lifted the suspension and permitted Plaintiff to offer the Spy Phone app for download on Google Play, Defendant gave no indication that Plaintiff's app violated the Spyware Prohibition.

### Plaintiff's Ongoing Efforts To Enforce Its Trademark Rights

51. In or around October 2012, Plaintiff became aware that other app developers were offering apps for download on Google Play that performed functions similar to Plaintiff's Spy Phone app and that were marketed, offered and/or sold under the name Spy Phone or using the phrase Spy Phone as part of its name.

52. During the period October 2012 through June 2013, Plaintiff directed its legal counsel to notify Defendant of these potential trademark violations in accordance with Defendant's intellectual property infringement policy and requested that any infringing apps be removed from Google Play.

53. The apps about which Plaintiff's counsel complained to Defendant included those offered and marketed under the following names: Spy Phone, B SpyPhone, Spy Phone Lite, Galyum Spy Phone, and Spy Phone App.

54. Prior to June 24, 2013, in each instance when Plaintiff's counsel sent a trademark infringement claim to Defendant, Defendant removed the infringing app from Google Play, except in those instances where the infringing app had previously been removed before Defendant could act.

## DEFENDANT PERMANENTLY SUSPENDS PLAINTIFF FROM GOOGLE PLAY AND INTENTIONALLY DISREGARDS PLAINTIFF'S TRADEMARK RIGHTS

55. On or about June 24, 2013, Plaintiff's counsel submitted a trademark complaint to Defendant concerning an app offered for download on Google Play by a developer known as Reptilicus.net under the name "Reptilicus.net Brutal SpyPhone," which performed a function similar to Plaintiff's Spy Phone app.

56. At the time Plaintiff filed this complaint, the Reptilicus.net Brutal SpyPhone app had became the top rated app to appear in search results when consumers searched Google Play using the keyword "spyphone," even though that app had far fewer downloads than Plaintiff's Spy Phone app.

57. On or about June 28, 2103, Plaintiff received an electronic notification from Defendant stating that Plaintiff's Spy Phone app had been permanently suspended from Google Play and that its developer account would be permanently terminated for multiple violations of the Spyware Prohibition.

58. At the time Plaintiff's app was suspended and its developer account terminated, there were numerous other apps being offered for download on Google Play with similar functionality that held themselves out as "concealed" apps and that did not contain icons or other notices to inform the user that the app was downloaded on the phone.

59. On or about July 16, 2013, Plaintiff received an electronic notification from Defendant stating that Defendant would take no action in response to Plaintiff's June 24 trademark complaint because Defendant "is not in a position to mediate trademark disputes between developers and trademark owners."

60. Plaintiff incurred cost in excess of $100,000 in connection with the development and marketing of its Spy Phone app and the assignment of the Spy Phone trademark.

61. Due to Defendant's suspension of the Spy Phone app and the termination of Plaintiff's developer account, Plaintiff has suffered and will continue to suffer irreparably harm to its business for which it has no adequate remedy at law.

AS AND FOR A FIRST CAUSE OF ACTION
(Violation of the Lanham Act § 43(a))

62. Plaintiff repeats and realleges the foregoing paragraphs of the complaint as if fully set forth herein.

63. Under § 43(a) of the Lanham Act, 15 U.S.C. § 1141(a), any person who uses in commerce any word, term or name or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

64. Plaintiff notified Defendant, through Defendant's online complaint form, that Reptilicus.net was using Google Play to aid in acts of trademark infringement and unfair competition by advertising and/or offering an app for download called Reptilicus.net Brutal SpyPhone on Google Play.

65. Despite being notified by Plaintiff that its trademark was being infringed, Defendant continued to permit Reptilicus.net to use Google Play to infringe Plaintiff's trademark rights, with actual knowledge of, or in reckless disregard of, Plaintiff's rights and Reptilicus.net's infringement.

66. Defendant's activities constitute willful and intentional infringement of Plaintiff's registered trademark, are in total disregard of Plaintiff's rights and were undertaken and have continued in spite of Defendant's knowledge that the use of Plaintiff's Spy Phone Trademark by Reptilicus.net was in direct contravention of Plaintiff's rights.

67. Based on the foregoing, Defendant is liable to Plaintiff for damages and attorneys' fees in an amount to be determined at trial.

## AS AND FOR A SECOND CAUSE OF ACTION
(Direct and Contributory Violation of the Lanham Act § 32(1))

68. Plaintiff repeats and realleges the foregoing paragraphs of the complaint as if fully set forth herein.

69. Under § 32(1) of the Lanham Act, any person who shall, without consent, use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive shall be liable in a civil action.

70. Defendant's activities constitute willful and intentional infringement of Plaintiff's registered trademark and/or contributed to willful and intentional infringement of Plaintiff's registered trademark by others.

71. Based on the foregoing, Defendant is liable to Plaintiff for damages and attorneys' fees in an amount to be determined at trial.

### AS AND FOR A THIRD CAUSE OF ACTION
(Breach of Contract)

72. Plaintiff repeats and realleges the foregoing paragraphs of the complaint as if fully set forth herein.

73. Plaintiff fully performed its obligations and complied with all terms and conditions of the parties' agreement, including all of Defendant's rules, regulations and policies incorporated therein.

74. Defendant breached the parties' agreement by, among other things, suspending Plaintiff from offering its Spy Phone app for download on Google Play without cause, failing to properly consider Plaintiff's appeals after being suspended, terminating Plaintiff's developer account, and failing to take appropriate action to protect Plaintiff's intellectual property rights despite notice of infringement.

75. Plaintiffs are entitled to recover damages proximately caused by Defendant's breach in an amount to be proven at trial, but not less than $100,000.

### AS AND FOR A FOURTH CAUSE OF ACTION
(Injunctive Relief)

76. Plaintiffs repeat and reallege the foregoing paragraphs of the complaint as if fully set forth herein.

77. Due to Defendant's dominance in the app market for phone and other electronic devices that operate on an Android operating system, Plaintiff has suffered and will continue to suffer irreparably harm to its business as a result of the suspension of its app from Google Play and the termination of its developer account.

78. In addition, due to Defendant's failure to take reasonable and appropriate steps to prevent infringement of Plaintiff's trademark rights on Google Play, despite notice of same, Plaintiff has suffered and will continue to suffer irreparably harm to its business.

79. Plaintiff has no adequate remedy at law.

80. Plaintiff is entitled to an order for injunctive relief, directing Defendant to reinstate Plaintiff's developer account and remove the suspension of its Spy Phone app from Google Play.

81. Plaintiff is further entitled to an order for injunctive relief, directing Defendant to take reasonable and necessary action to remove products and services from Google Play that infringe upon Plaintiff's intellectual property rights.

## JURY DEMAND

82. Plaintiff demands a trial by jury on all issues so triable.

WHEREFORE, Plaintiff demands judgment as follows:

A. On the First, Second and Third Causes of Action, money damages in an amount to be determined at trial, but not less than $100,000;

B. On the Fourth Cause of Action, injunctive relief requiring Defendant to reinstate Plaintiff's developer account, permit the Spy Phone app to be offered for download on Google Play and take necessary and reasonable step to protect Plaintiff's intellectual property rights;

C. On all causes of action, the costs of suit and prejudgment interest, including reasonable attorneys' fees where applicable; and

        D.      For such other and further relief as the Court deems just and proper.

Dated: August 16, 2013

                GREENBERG FREEMAN LLP

                By: /s/ *Michael A. Freeman*
                     Michael A. Freeman (MF-9600)
                     110 East 59th Street, 22nd Floor
                     New York, New York  10022
                     (212) 838-3121
                     Attorneys for Plaintiff